| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| Marie-Ann Greenberg, Esq.<br>Counselor at Law<br>30 Two Bridges Road<br>Suite 330<br>Fairfield, NJ  07004<br>By:  Marie-Ann Greenberg, Esq.<br>Chapter 13 Standing Trustee, Pro Se<br><br>Leressa Crockett, Esq.<br>Leressa Crockett Attorney at Law LLC.<br>76 South Orange Plaza, Suite 103<br>South Orange, NJ 07079<br>Tel.: (973) 378-8882  Fax: (973) 378-8955<br><br>Andrea C. Wei, Esq.<br>217 Warwick Avenue<br>Fort Lee, NJ  07024<br>Tel.: (201) 390-3575 Fax: (201) 969-1706<br><br>Attorneys for Defendants, John Keith Bagot, Et Al. | |
| In Re:<br>JOHN KEITH BAGOT,<br>　　　　　　　　Debtor. | <br><br>Bk. Case No. 09 – _____  (MS) |
| MARIE ANN GREENBERG,<br>Chapter 13 Standing Trustee<br><br>and<br><br>JOHN KEITH BAGOT and VIRGINIA M.<br>BAGOT,<br>debtors,<br>　　　　　　　Plaintiffs,<br>　　　v.<br><br>GMAC MORTGAGE, LLC,<br>BANKUNITED, FSB, WELLS FARGO<br>BANK, N.A., GREENWICH CAPITAL<br>FINANCIAL PRODUCTS, INC.,<br>GREENWICH CAPITAL ACCEPTANCE,<br>INC., HOWARD OLMSTEAD,<br>JOSHUA SATKIN<br>　　　　　　Defendants. | <br><br>Adv. Pro No. 09- |

## PRELIMINARY STATEMENT

This action arises out of a predatory mortgage loan that Defendants fraudulently induced Mr. and Mrs. Bagot to enter. The home mortgage loan which is the subject of this complaint was made without regard for the Bagots' ability to repay it and the loan did not provide them with a reasonable, tangible, net benefit. The mortgage loan encumbering the Bagots' primary residence was designed to obscure the true cost and dangers of the loan from the homeowner and as such constitues a prohibited, unconscionable commercial lending practice.

Mr. and Mrs. Bagot and the Chapter 13 Standing Trustee seek to enforce the rescission of the loan pursuant to State and Federal Consumer Protection laws and the common law and seek an award of damages resulting from Defendants' participation in predatory lending practices.

## COMPLAINT FOR RECOVERY OF DAMAGES, PUNITIVE DAMAGES AND TREBLE DAMAGES AND RELATED STATUTORY RELIEF

1. The above-captioned bankruptcy case was commenced by John Keith Bagot and Virginia M. Bagot on September 11, 2009 by their filing of a Voluntary Petition. The case remains pending in this District.

2. Marie Ann Greenberg, Trustee, Co-Plaintiff herein, is the duly appointed and acting Chapter 13 Standing Trustee for this case.

3. This Court has jurisdiction pursuant to 28 U.S.C. 1334 and 28 U.S.C. §157.

4. Venue is properly laid in this district pursuant to 28 U.S.C. §1409.

5. This matter is a core proceeding pursuant to 28 U.S.C. §157(b).

## PARTIES

6. Plaintiffs, John Keith Bagot and Virginia M. Bagot, are the debtors and consumers who reside at and own the property located at 880 Bogert Avenue, River Edge, Bergen County, New Jersey.

7. The Bagots' adult disabled daughter resides with the Bagots.

8. Plaintiff, Marie Ann Greenberg, is the Chapter 13 Standing Trustee in this District and for this case.

9. Ms. Greenberg conducted a meeting of creditors.

10. Defendant, BankUnited, FSB is a Florida thrift institution, engaged in the origination of sub-prime mortgages, with a business address located at 255 Alhambra Circle, Coral Gables, FL 33134, and is the entity that originated the Bagots' mortgage.

11. Defendant GMAC Mortgage, LLC (formerly known as GMAC Mortgage Corporation and hereinafter referred to as "GMAC"), is a Delaware corporation headquartered in Fort Washington, PA. GMAC engages principally in residential mortgage servicing and origination of first and second lien residential mortgage loans nationwide. GMAC maintains an address for service of notices as follows: c/o Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

12. Defendant Greenwich Capital Financial Products, Inc. (hereinafter "GCFProducts"), with a business address located c/o Greenwich Capital Markets, Inc., Regional Headquarters, 600 Steamboat Road, Greenwich, Connecticut, is a wholly owned subsidiary of Greenwich Capital Holdings, Inc., and, upon information and belief, provides investment banking services to its clients, including mortgage lenders seeking to securitize mortgages through mortgage backed securities, and acts as purchaser of such mortgages.

13. Defendant Greenwich Capital Acceptance, Inc. (hereinafter "GCAcceptance"), with a business address located c/o Greenwich Capital Markets, Inc., Regional Headquarters, 600 Steamboat Road, Greenwich, Connecticut, is a wholly owned subsidiary of Greenwich Capital Holdings, Inc., and, upon information and belief, serves as the depositor in the securitization of mortgages purchased by GCFProducts.

14. Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), with a business address located at 9062 Old Annapolis Road, Columbia, MD  21045, is chartered in Sioux Falls, South Dakota and has its headquarters in San Francisco, California.  Wells Fargo is a diversified financial services institution, and in its capacity as trustee for securitization trusts, acts on behalf of investors in Real Estate Mortgage Investment Conduits (REMICs).

15. Defendant Howard Olmstead, mortgage broker, address unknown, is or was a New Jersey State Licensed Mortgage Broker, State License No. unknown, and his associate, Joshua Satkin, who is a New Jersey State Licensed Mortgage Solicitor, Ref. Num. 0746216 with an address c/o Excelsior Mortgage LLC, 22 Ridge Road, 2nd Floor, Lyndhurst, NJ  07071, together prepared and assisted in processing the Bagots' sub-prime mortgage at issue.

16. The Defendants identified in the paragraphs above are collectively referred to herein as "Defendants."

## FACTUAL ALLEGATIONS

**GMAC, BANKUNITED, GCFPRODUCTS, GCACCEPTANCE, WELLS FARGO, HOWARD OLMSTEAD, AND JOSHUA SATKIN SEEK OUT FINANCIALLY UNSOPHISTICATED HOMEOWNERS FOR PREDATORY EQUITY BASED HOME MORTGAGE LOAN PRODUCTS**

17. Plaintiff John Bagot is an 80 year old Korean War Veteran employed párt-time, two half days per week, as a cab driver.  His wife, Virginia Bagot, is a 79 year old senior citizen.

They live with their 46 year old disabled daughter. Over the past several years, both John Bagot and Virginia Bagot have suffered health problems that have caused the family to suffer income setbacks. In recent years, Virginia Bagot has suffered from one stroke and two heart attacks. In addition to Mr. Bagot's part-time income, the Bagots receive monthly Social Security payments.

18. The Bagots purchased their home in 1970 for approximately $47,000.00. It was the second and last time that they purchased a primary residence. They obtained a mortgage of approximately $38,000 in connection with the home purchase.

19. Over the intervening years, the home mortgage was refinanced multiple times, and in 2005, the Bagots entered into a first mortgage loan and home equity line of credit ("HELOC") with Indymac Bank, FSB. On February 4, 2005, the Bagots borrowed $287,000 from Indymac in a first mortgage payable over 30 years, and on April 20, 2005, opened a $75,000 home equity line of credit with Indymac. The first mortgage was a "FlexPay" Adjustable Rate Mortgage, and the Bagots' first monthly payment, due on March 1, 2005, was equal to $923.11, exclusive of taxes and insurance, fixed for 12 months and adjusting annually thereafter. Starting on March 1, 2006, the Bagots' monthly payment adjusted to $992.34, fixed for 12 months.

20. The property is a small single family residence consisting of nine rooms, which has been in a state of moderate disrepair continuously since prior to the time of purchase.

21. In or about 2006, the Bagots began to have difficulty affording their unsecured debts. Unsophisticated about their legal options, terrified because they were under the erroneous impression that a bankruptcy would cause them to lose their home, and without the financial

wherewithal to consult with an attorney, the Bagots sought to consolidate their unsecured

debt in order to lower their monthly payments.

22. The Bagots were so unsophisticated about their financial options that they had no idea what

types of loan products might be available to consolidate their unsecured debts. However,

their goal at all times was to borrow against the equity they had built up over 38 years in

their home in order to repay their unsecured debts; their goal was not to refinance their low-

monthly payment first mortgage and low-interest rate, junior lien HELOC with a single

higher interest rate and higher principal amount first lien mortgage.

23. The Bagots heard a radio advertisement claiming "for the best rates, contact Howard

Olmstead," and Mr. Bagot contacted Joshua Satkin, a representative of Howard Olmstead.

Mr. Bagot described to Joshua Satkin his reason for seeking a loan, which was to borrow

against the equity in the Bagots' home in order to repay their unsecured debts.

24. Despite being advised of the reason for the loan, Howard Olmstead and his associate,

Joshua Satkin, at no time informed the Bagots that they might be eligible for other loan

products, such as another low interest rate junior lien HELOC in a larger amount, which

could help repay their unsecured debts.

25. Despite being advised of the reason for the loan, Howard Olmstead and his associate,

Joshua Satkin, at no time informed the Bagots that they might be eligible for other loan

products, such as a reverse mortgage, which would eliminate the need for the Bagots to

make unaffordable and onerous monthly mortgage payments and would, instead, provide an

income stream to help repay their unsecured debts.

26. Despite being advised of the reason for the loan, Howard Olmstead and his associate, Joshua Satkin, at no time informed the Bagots that BankUnited offered home equity loans and reverse mortgages, in addition to refinances of first mortgage home loans.

27. The Bagots were induced to enter into the mortgage transaction that is the subject matter of this action by Olmstead and Satkin's omission.

28. The BankUnited mortgage unnecessarily refinanced the entire balance of the Bagots' first mortgage and second lien HELOC and also refinanced a portion of the Bagots' unsecured debt.

29. While the Bagots sought only to reduce their monthly payments for unsecured debt, Olmstead and Satkin's action of refinancing the Bagots' first mortgage, second lien HELOC and unsecured debt was detrimental to the Bagots, provided the Bagots with no tangible, net benefit, secured their previously unsecured debts, and unnecessarily placed the Bagots at high risk of foreclosure and loss of their home.

30. The Bagots informed Olmstead and his associate, Satkin, and thus BankUnited, through its mortgage broker and its agent, of their limited income, lack of assets and precarious health.

31. With full knowledge of the Bagots' limited income, lack of assets and precarious health, Olmstead, Satkin, and thus BankUnited through its mortgage broker and agent, nevertheless unconscionably made a mortgage loan to the Bagots that was onerous and too costly for them to repay *ab initio,* and was totally without regard for the Bagots' ability to repay.

32. The Bagots executed a Note and Mortgage in favor of BankUnited in the amount of $420,000.00 at an interest rate equal to 7.375% for the first year starting September 1, 2006.

33. The terms of the Bagots' Note and Mortgage provided for an initial, 'teaser' rate of 1.7% to apply to the loan until the first payment change date, October 7, 2007.

34. At closing, the Bagots paid $1,978.96 for 23 days' interest for the period from closing on August 9, 2006 to September 1, 2006, at an effective rate of 7.48% per annum.

35. The Bagots' initial 'teaser' monthly payment beginning September 1, 2006 was $1490.15, which amount was less than the actual principal and interest due on the loan during this period.

36. The difference between the initial 'teaser' monthly payment of $1,490.15 and the actual amount of principal and interest due on the loan each month was added onto the principal amount of the loan, resulting in negative amortization of principal.

37. The Bagots' Note and Mortgage also contained a prepayment penalty provision whereby the Bagots were required to pay a penalty of six months' advance interest upon a full or partial prepayment of the Note obligation.

38. While the Bagots sought only to reduce their monthly payments for unsecured debt, Olmstead and Satkin's action of refinancing the Bagots' first mortgage, second lien HELOC and unsecured debt into a single, high cost, onerous and negatively amortizing first mortgage which was unaffordable *ab initio* was detrimental to the Bagots, provided the Bagots with no tangible, net benefit, secured their previously unsecured debts and unnecessarily placed the Bagots at high risk of foreclosure and loss of their home.

39. In addition to the above, certain other terms of the mortgage were grossly unfair and unconscionable. For example, the Bagots were charged a "mortgage broker fee" of $8,400.00 or the equivalent of 2% of the loan paid to "Funding Solutions, LLC," but received nothing of value in exchange.

40. In addition, a yield spread premium of $8,925.00 or the equivalent of 2.125% of the loan, was also paid to "Funding Solutions, LLC" for putting the Bagots into a higher yielding

loan than they were otherwise eligible to receive, but the Bagots received nothing of value in exchange.

41. The mortgage broker fee of $8,400.00 added to the yield spread premium of $8,925.00 equals $17,325, which is the equivalent of 4.125% of the principal amount of the loan.

42. Upon information and belief, disbursements listed on the Settlement Statement prepared in connection with the BankUnited mortgage closing were not issued as listed, and BankUnited may have thereby deprived Defendants of some of the funds they were supposed to have received.

43. BankUnited failed to provide each borrower with a proper notice of his or her right to cancel the mortgage in the manner prescribed the Truth in Lending Act, in contravention of the Bagots' rights under the Truth in Lending Act.

44. BankUnited failed to disclose properly the amount financed, finance charge and annual percentage rate of the mortgage in violation of the Truth in Lending Act.

45. On September 10, 2008, the Bagots notified GMAC, GMAC's counsel and BankUnited of their election to rescind the loan as authorized by TILA, but to-date neither GMAC nor BankUnited have complied with their TILA rescission obligations.

### The BankUnited/GCFProducts/GCAcceptance/WellsFargo/GMAC relationship:

46. Pursuant to certain contracts between them, BankUnited, GCAcceptance, GCFProducts and Wells Fargo embarked upon a profit-seeking business venture creating, selling and managing investment securities including Real Estate Mortgage Investment Conduits (REMICs).

47. Upon information and belief, GCAcceptance provides funding to Defendant BankUnited either directly or indirectly in order to enable BankUnited to make mortgage loans.

48. BankUnited makes subprime residential mortgage loans, such as the mortgage that is the subject of the instant foreclosure action.

49. Bank United sells certain of the mortgage loans to Defendant GCFProducts pursuant to a "Mortgage Loan Purchase Agreement" between them.

50. Upon information and belief, GCFProducts purchases the mortgages and transfers them to GCAcceptance in order to serve as a Special Purpose Entity, a bankruptcy remote entity established in order to protect the trust from the potential insolvency or liability of the originator of the mortgages and to enhance the rating of the securities by agencies such as Standard and Poor's.

51. GCAcceptance assigns a pool of mortgages to Wells Fargo, as Trustee for the creation of securitization trusts.

52. As Trustee, Wells Fargo invites investors to buy certificates representing beneficial interests in the trust of pooled mortgage loans. Investors are compensated through interest payments made by the mortgagors.

53. As a trustee or servicer, GMAC Mortgage LLC may have responsibility for servicing the related mortgage loans including, collection of funds, reporting, accounts, insurance and enforcement of foreclosure and other proceedings with respect to the pooled mortgage loans.

54. All parties in this venture are aware that BankUnited, GCFProducts, GCAcceptance, GMAC and Wells Fargo are or have been the subject of numerous lawsuits and other allegations of predatory lending.

55. All parties in this venture are aware that BankUnited uses underwriting standards less stringent than those of more traditional lenders, and the offering prospectus for the certificates informs potential certificate holders that BankUnited's less stringent underwriting standards may result in losses allocated to the offered certificates due to high incidents of foreclosure.

56. All parties in this venture are aware that as a result of BankUnited's underwriting standards, the mortgage loans are likely to experience rates of delinquency, foreclosure and bankruptcy than are higher than those experienced by mortgage loans underwritten in a   more traditional manner.

## THE CENTRAL DOCUMENTS

57. Attached as Exhibit A is a true copy of a document provided by the closing agent, LandproTitle Services, LLC, 30 White Horse Pike, Berlin, New Jersey  08009 ("LandPro") (now defunct) to Mr. Bagot at closing entitled "Federal Truth in Lending Disclosure Statement," listing BankUnited, FSB as Creditor (hereinafter "Truth in Lending Disclosure").

58. Attached as Exhibit B is a true copy of a document provided by LandPro to Mr. Bagot at closing entitled "Settlement Statement."

59. Attached as Exhibit C is a true copy of a document provided by LandPro to Mr. Bagot at closing entitled "Fees and Charges" on BankUnited letterhead.

60. The Settlement Statement provides that the following disbursements are to be made from the closing proceeds:

- ■ Line 103 recounts the total settlement charges to the borrower also contained at line 1400 in the amount of $54,645.95

- Line 104 Countrywide Home Loans in the amount of $40,989.34

- Line 303 cash to borrower $19,260.37

- Line 808 Mortgage Broker Fee paid to Funding Solutions, LLC at settlement in the amount of $8400.00

- Line 809 BankUnited Underwriting Fee in the amount of $288.00

- Line 810 BankUnited Document Preparation Fee in the amount of $250.00

- Line 811 described as "**See attached for breakdown" in the amount of ($8,925.00) and $106.00, consisting of $8,925.00 paid outside closing to Funding Solutions, LLC as yield spread premium, and a total of $106.00 consisting of $14.00 for BankUnited Flood Certification, $62.00 for BankUnited Tax Service Fee and $30.00 for BankUnited wire fee

- Line 901 interest from 8/09/06 to 9/01/06 @ $86.0417/day (23 days) in the amount of $1,978.96

- Line 1101 settlement or closing fees to LandPro in the amount of $350.00

- Line 1108 Title Insurance fees payable to LandPro Title Services in the amount of $1643.00

- Lines 1111 Wire Fee of $35.00, 1112 Courier Fee of $45.00, and 1113 Electronic Document Fee of $25, totaling $105.00, all payable to LandPro

- Line 1201 Recording Fees in the amount of $175.00

61. Attached as Exhibit D is a true copy of the Adjustable Rate Note (hereinafter "the Note").

62. Attached as Exhibit E is a true copy of a document provided by LandPro to Mr. Bagot at closing entitled "BankUnited Prepayment Penalty Disclosure."

63. Attached as Exhibit F is a true copy of a document provided by LandPro to Mr. Bagot at closing entitled "BankUnited Loan Program Disclosure for the One-Month Treasury

Average Adjustable Rate Mortgage (1 Month MTA ARM with Initial Discounted Monthly Payment)."

64.   Attached as Exhibit G is a true copy of the Mortgage (hereinafter "the Mortgage").

65.   Attached as Exhibit H is a true copy of a document entitled "BankUnited Closing Instructions, Loan Number 000501348-7."

66.   Attached as Exhibit I is an unrecorded copy of an Assignment of Mortgage, dated August 25, 2006, and filed by GMAC with its Opposition to Defendant's Motion to Dismiss the Complaint, dated October 31, 2009 in connection with *GMAC Mortgage, LLC v. John Keith Bagot, et al*, Docket No. F-30837-08, Superior Court of New Jersey, Chancery Division (hereinafter "the Assignment of Mortgage").

67.   GMAC's foreclosure complaint was filed on August 11, 2008.

68.   The Assignment of Mortgage does not provide any identifying information concerning the Mortgage it purports to assign aside from the fact that BankUnited is the assignor (typewritten), GMAC is the assignee (written in by hand) and that the Mortgage is dated August 4, 2006.

69.   Attached as Exhibit J is a copy of the recorded Assignment of Mortgage, obtained by Plaintiff's counsel from the Bergen County Recorder of Deeds, Bergen County Justice Center (the "Recorded Assignment").

70.   Upon information and belief, the Assignment of Mortgage was recorded by GMAC on August 20, 2008.

71.   The Recorded Assignment provides additional identifying information that has been filled in by hand, specifically, that the amount of the Note is "$420,000."

## WHAT THE GMAC/BANKUNITED MORTGAGE LOAN DOCUMENTS SAY
## COMPARED TO WHAT ACTUALLY TRANSPIRED

72.    The Terms of the Mortgage and Note are unconscionable.

73.    The Note provides the principal amount is $420,000.00.

74.    The Note provides, in paragraph 2, that the interest rate is 7.3750%. It states further that the interest rate will change in accordance with Section 2 of the Note.

75.    Section 2 of the Note provides that in the interest rate may change on October 1, 2006 and on the first day of every month thereafter based upon an index consisting of the twelve month average of monthly yields on U.S. Treasury Securities, plus a margin of 3.0% .

76.    Paragraph 3B of the Note states that the initial monthly payment will be $1,490.15, based upon an initial rate of 1.7%.

77.    Yet the Bagots paid prepaid interest from 8/09/06 to 9/01/06 @ $86.0417/day (23 days) in the amount of $1,978.96, at an effective rate of 7.48%.

78.    Paragraph 3A of the Note provides that the outstanding balance will be due on September 1, 2036 (the "Maturity Date").

79.    Paragraph 3C states that the Bagots' monthly payment of $1,490.15 will change on October 1, 2007, and annually thereafter.

80.    Paragraph 3D states that the amount of the monthly payment will change in order to ensure that all principal and accrued interest is paid in substantially equal installments by the Maturity Date, and that such increase will be capped at 7.5% of the immediately prior monthly payment amount.

81.    Paragraph 3E states that the amount of any difference between the monthly payment amount and the actual monthly adjustable accrued interest will be added to the outstanding principal amount (negative amortization).

82. Paragraph 3F states that if through negative amortization the outstanding principal amount exceeds 115% of the original loan amount, then the monthly payment will immediately increase without regard to the 7.5% cap to an amount sufficient to repay all principal and accrued interest on the Maturity Date.

83. The actual monthly payment of $1,490.15 exceeded Mr. and Mrs. Bagot's monthly Social Security income and was thus unaffordable to the Bagots and all the defendants knew or should have known that.

84. The Defendants knew that the monthly payments under the loan exceeded the Bagots' monthly income and made no provision for payment of monthly living expenses and all the defendants knew or should have known that.

85. Thus, the lower interest rate in the initial term is solely for the purpose of disguising the true cost of the loan and enabling the lender to state a lower APR on the Truth in Lending Statement.

86. An Addendum to the Note and a document separate from the Note contained a prepayment penalty for the first three years.

87. The prepayment penalty provides that the lender will charge a penalty equal to six months' of interest on the original principal amount at the interest rate in effect at the time of prepayment, for prepayment of the loan in full.

88. The prepayment penalty provides that the lender will charge a penalty equal to six months' of interest on the difference between the amount of aggregate prepayments made within a consecutive twelve month period and 20% of the initial principal amount, at the interest rate in effect at the time of prepayment, for partial prepayment of the loan.

89.  At the initial "teaser" rate of 1.7%, the prepayment penalty of six months' interest on the initial loan amount would equal approximately $3,750.00 or 0.850%.

90.  The Bagots were not advised of the pre-payment penalty prior to the presentment of the paperwork at the closing.

91.  The prepayment penalty is unlawful under New Jersey law.

92.  The Bagots were provided with a Truth in Lending Disclosure.

93.  The Truth in Lending Disclosure does not reflect the true cost of the loan.

94.  The Truth in Lending Disclosure does not disclose the pre-payment penalty.

95.  The Settlement Statement is deceptive and does not accurately reflect how the loan proceeds were in fact disbursed.

96.  A mortgage broker fee of $8,400.00 was paid to Funding Solutions, LLC, equal to 2.0% of the original loan amount.

97.  In addition, payment of $8,925.00 in yield spread premium fees to "Funding Solutions, LLC," equal to 2.125% of the original loan amount, was never disclosed to the Bagots.  By paying additional compensation to the mortgage broker in the form of yield spread premium, and by failing to disclose to the Bagots this conflict of interest--that the mortgage broker was representing the lender in this transaction while, in fact, being compensated by the lender for this representation--BankUnited caused the mortgage broker to violate a duty of loyalty to the Bagots and participated in a fraud against them.

98.  Funding Solutions, LLC provided no benefit to Mr. and Mrs. Bagot.

99.  The Assignment of the Mortgage is either defective or ineffective.  The Assignment of Mortgage purports to transfer ownership from BankUnited to the assignee, GMAC Mortgage, LLC on August 25, 2006, yet GMAC Mortgage, LLC may not have been formed

until after this date.  Prior to its conversion to a limited liability corporation, GMAC
Mortgage, LLC was doing business under the name GMAC Mortgage Corporation.

100.   The Assignment of Mortgage was executed by BankUnited and notarized on August 25,
2006.  Florida law permits execution of assignments in blank, wherein the assignor's
execution of the assignment is duly notarized, but the name of the assignee, the amount
being assigned, and other descriptive information are provided after the fact, when such
information has been determined.  New Jersey law does not permit such assignments in
blank.

101.   GMAC, as the plaintiff in the foreclosure action, cannot establish when the Assignment of
Mortgage as an assignment in blank was completed with the addition of the name of the
assignee, has not produced the original note obligation, and has never alleged that it has
possession of the original note obligation.

## COUNT I

### (Consumer Fraud N.J.S.A. 56:8-1 et seq.)
### (AGAINST GMAC, BANKUNITED, GCFPRODUCTS, GCACCEPTANCE, WELLS FARGO, HOWARD OLMSTEAD AND JOSHUA SATKIN)

102.   Plaintiffs Marie Ann Greenberg and John Keith Bagot repeat and reallege each and every
preceding paragraph as if fully set forth herein.

103.   Defendants GMAC, BankUnited, GCFProducts, GCAcceptance, Wells Fargo, Howard
Olmstead and Joshua Satkin engaged in unconscionable commercial practices, deception,
fraud, false pretense, false promise and/or misrepresentations relating to the August 4, 2006
mortgage loan transaction, detailed in the foregoing allegations of fact.

104.   Defendants GMAC, BankUnited, GCF Products, GC Acceptance, Wells Fargo, Howard
Olmstead and Joshua Satkin engaged in acts of omission, including but not limited to

16

knowing concealment, suppression and omissions of material facts in connection with the

August 4, 2006 mortgage loan transaction detailed in the foregoing allegations of fact.

105.  Howard Olmstead did not disclose the terms of the loan to the Bagots.

106.  Joshua Satkin did not disclose the terms of the loan to the Bagots.

107.  BankUnited prepared and delivered a settlement sheet to the Bagots which misrepresented
how the loan proceeds would be disbursed.

108.  BankUnited and GMAC provided the Bagots with misleading and inconsistent loan
documents which concealed and confused the terms and long term implications of the loan.

109.  GMAC and BankUnited advertise and sell residential home loan mortgage refinancing
products which are unsuitable for the homeowners to whom they are marketed including but
not limited to Mr. and Mrs. Bagot.

110.  GMAC and BankUnited advertise and sell residential home loan refinancing products which
they know or should know are unaffordable to the homeowner based on the homeowner's
income.

111.  GMAC and BankUnited advertise and sell residential home loan refinancing products which
are made solely on the basis of the equity in the homeowner's primary residence without
regard for the homeowner's ability to repay the loan.

112.  GMAC and BankUnited advertise and sell residential home loan refinancing products which
including the one it sold to Mr. and Mrs. Bagot which was a mismatch between their needs
and the terms of the loan.

113.  GMAC and BankUnited advertise and sell residential home loan refinancing products
including the one sold to Mr. and Mrs. Bagot which did not fit their underlying needs.

114. GMAC and BankUnited advertise and sell residential home loan refinancing products which products it sold to Mr. and Mrs. Bagot in which the terms of the loan product are so disadvantageous to the Bagots that there was little likelihood that they had the capability to repay the loan.

115. The foregoing acts and omissions constitute violations of New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-2 at seq., as a result of which John Keith Bagot and Virginia M. Bagot and the debtor's estate suffered ascertainable loss.

**WHEREFORE**, Plaintiffs Marie Ann Greenberg and John Keith Bagot seek a judgment as follows:

A. Declaratory and injunctive relief declaring the August 4, 2006 loan and mortgage void and unenforceable;

B. Declaratory and injunctive relief rescinding and/or reforming the August 4, 2006 loan and mortgage;

C. Declaratory and injunctive relief prohibiting Defendants from engaging in lending without regard to the homeowner's ability to repay and/or equity based lending secured by a homeowner's primary residence;

D. Awarding actual damages;

E. Awarding treble damages;

F. Awarding costs and attorneys fees; and

G. Granting such other relief as the court deems just and equitable.

## COUNT II

### (TRUTH IN LENDING ACT VIOLATION)
### (Against Defendants GMAC and BankUnited)

116. Plaintiffs Marie Ann Greenberg and John Keith Bagot repeat and reallege all paragraphs above as if fully set forth herein.

117. The transaction between BankUnited and GMAC and Mr. and Mrs. Bagot resulting in the August 4, 2006 loan and mortgage transaction was a consumer transaction, and was a non-purchase money mortgage secured by the Bagots' primary residence.

118. At all times relevant to the transaction, GMAC and BankUnited were creditors under the federal Truth in Lending Act, 15 U.S.C.A. § 1601 *et seq.* ("Truth In Lending Act") and as such were required to provide notices of the right to rescind the mortgage and to deliver material disclosures including, but not limited to, the amount financed, finance charge and annual percentage rate to Mr. and Mrs. Bagot consistent with the Truth in Lending Act.

119. In connection with the August 4, 2006 transaction GMAC and/or BankUnited failed to comply with applicable mandatory disclosure provisions of Truth In Lending Act.

120. GMAC and/or BankUnited failed to provide Mr. and Mrs. Bagot with proper and accurate material disclosures as required by Truth In Lending Act.

121. Defendants and all predecessors or assignors failed to comply with Truth In Lending Act and the regulations promulgated thereunder in the following ways, including but not necessarily limited to:

    (a)  failure to make required disclosures clearly and conspicuously in violation of 15 U.S.C. §1632(a) and Regulation Z §226.17(a);

19

(b)  failure to clearly and conspicuously disclose the interest rate upon which the payments listed in the Truth in Lending Act Disclosure Statement (TILDS) are based in violation of Regulation Z, 12 C.F.R. § 226.17 and 12 C.F.R. § 226.19;

(c)  failure to clearly and conspicuously disclose that the loan will not amortize under the payment schedule provided on the TILDS in violation of Regulation Z, 12 C.F.R. § 226.17 and 12 C.F.R. § 226.19;

(d)  failure to disclose the effect of rate and/or payment caps in violation of 12 C.F.R. § 226.17(c)(1)(10)iii and the Official Staff Commentary thereto;

(e)  failure to include in the finance charge certain charges incident to the extension of credit as required by 15 U.S.C. §1605 and Regulation Z §226.4, thus improperly disclosing the finance charge in violation of 15 U.S.C. §1638(a)(3) and Regulation Z §226.18(d);

(f)  improper inclusion or improper failure to include certain charges in the amount financed which are finance charges, and thus improperly disclosed the amount financed in violation of 15 U.S.C. §1638(a)(2) and Regulation Z §226.18(b);

(g)  calculating the APR based upon improperly calculated and disclosed finance charges and amount financed, 15 U.S.C. §1606, Regulation Z §226.22, thereby understating the disclosed APR in violation of 15 U.S.C. §1638(a)(4) and Regulation Z §226.18(c)

122.  In light of these violations, Mr. Bagot and his estate are entitled to rescind the transaction.

123.  Mr. Bagot exercised the right to rescind by sending a Notices of Rescission of Mortgage to GMAC and BankUnited via regular and certified mail, return receipt requested.

124. GMAC and BankUnited failed to comply with their rescission obligations under Truth In Lending Act.

125. The Truth In Lending Act violations were apparent on the face of the documents, resulting in assignee liability.

126. The finance charges collected or paid to others in this transaction are $_____.00 (to be determined).

**WHEREFORE,** Plaintiffs Marie Ann Greenberg and John Keith Bagot seek a judgment as follows:

A. Rescission of the August 4, 2006 transaction, including but not limited to a declaration that the estate and/or Mr. Bagot are not liable for any finance charge or other charge imposed in connection with either transaction;

B. Declaratory and injunctive relief voiding the security interest;

C. Awarding actual damages;

D. Awarding statutory damages;

E. Awarding attorneys fees and costs; and

F. Granting such other relief as the court deems just and equitable.

### COUNT III

### VIOLATION OF THE NEW JERSEY HOME OWNERSHIP SECURITY ACT
### (N.J.S.A. 46:10B-22 *et seq.* "N.J. HOSA")
### (Against GMAC, BANKUNITED, GCF PRODUCTS, GC ACCEPTANCE, WELLS FARGO, HOWARD OLMSTEAD AND JOSHUA SATKIN)

127. Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

21

128. The defendants GMAC, BankUnited, GCFProducts, GCAcceptance, Wells Fargo, Howard Olmstead and Joshua Satkin are creditors subject to the imposition of liability pursuant to N.J.S.A. 46:10B-33 and N.J.S.A.46:10B-24.

129. The transaction is a high cost loan as defined by N.J. HOSA because the total points and fees exceed 4.5% of the total loan amount.

130. Charges associated with the loan fail to satisfy 12 C.F.R. § 226.4(c)(7) and/or 12 C.F.R. § 226.4(d)(2) and are therefore properly included in the calculation of points and fees.

131. The loan contains a prepayment penalty, the maximum of which is properly included in the calculation of points and fees.

132. The transaction violates N.J. HOSA because the Defendants GMAC, BankUnited, GCF Products, GC Acceptance, Wells Fargo, Howard Olmstead and Joshua Satkin failed to provide Mr. and Mrs. Bagot with the Notice and Counseling required by N.J. HOSA for high cost home loans.

**WHEREFORE** Plaintiff seeks a judgment against Defendants GMAC, BankUnited, GCF Products, GCAcceptance, Wells Fargo, Howard Olmstead and Joshua Satkin as follows:

a. Awarding statutory damages equal to the finance charges plus up to 10% of the amount financed;

b. Awarding punitive damages;

c. Awarding Attorney's fees and costs;

d. Granting such other relief as this Court deems just and equitable.

## COUNT IV

### (Common Law Fraud/Fraud in the Inducement)
### (Against All Defendants)

133. Plaintiffs Marie Ann Greenberg and John Keith Bagot repeat and reallege all paragraphs above as if fully set forth herein.

134. Defendants misrepresented material facts which are set forth at length in the foregoing allegations of fact above to Mr. and Mrs. Bagot in order to induce them to enter the August 4, 2006 loan transaction.

135. The misrepresentations and omissions include but are not limited to the following:

- None of BankUnited, Howard Olmstead, Joshua Satkin and their successors and assigns disclosed the terms of the loan to Mr. and Mrs. Bagot.

- BankUnited, Howard Olmstead, Joshua Satkin and their successors and assigns, prepared and delivered a settlement sheet to the Bagots which misrepresented how the loan proceeds would be disbursed.

- BankUnited, Howard Olmstead, Joshua Satkin and their successors and assigns provided the Bagots with misleading and internally inconsistent loan documents which concealed and confused the terms and long term implications of the loan.

136. At all times relevant, Defendants made their misrepresentations knowingly.

137. Defendants made the misrepresentations with the intent that Mr. and Mrs. Bagot rely on them.

138. Mr. and Mrs. Bagot reasonably relied on Defendants' misrepresentations.

139. Mr. and Mrs. Bagot suffered damages as a result of the fraud.

**WHEREFORE,** Marie Ann Greenberg and John Keith Bagot seek a judgment against

Defendants, as follows:

A.   Declaratory and injunctive relief declaring the August 4, 2006 mortgage loan transaction

void and unenforceable;

B.   Declaratory and injunctive relief rescinding and/or reforming August 4, 2006 mortgage loan

transaction;

C.   Awarding actual damages;

D.   Awarding punitive damages; and

E.   Granting such other relief as the court deems just and equitable.


Dated: 11/13/2009                    MARIE ANN GREENBERG

                                     Counselor at law

                                     Attorneys for Plaintiff,

                                     Marie Ann Greenberg, Trustee

                            By:_ /s/  Marie Ann Greenberg_____

                                     Marie Ann Greenberg, Esq.


Dated: 11/13/2009                    LERESSA CROCKETT

                                     ANDREA C. WEI

                                     Attorney for Plaintiff, John Keith Bagot

                            By:_ /s/  Leressa Crockett_____

                                     Leressa Crockett, Esq.

                            By:_ /s/  Andrea C. Wei_____

                                     Andrea C. Wei, Esq.

**JURY DEMAND**

Plaintiffs hereby request trial by jury.

## SERVICE UPON ATTORNEY GENERAL AND THE NEW JERSEY DEPARTMENT OF BANKING AND INSURANCE

Service of a copy of the complaint in this matter is being made upon the Attorney General of the State of New Jersey, pursuant to the Consumer Fraud Act for the purpose of encouraging intervention, by mailing a copy of said complaint to Anne Milgram, Attorney General, Office of the Attorney General, ATTENTION: JAMES SAVAGE, ESQ., Hughes Justice Complex, P.O. Box 080, 25 West Market Street, Trenton, NJ 08625-0080 and to the New Jersey Department of Banking and Insurance, ATTENTION: LINDA SCHWIMMER, ESQ. 20 West State Street, PO Box 325, Trenton, NJ 08625.

Dated: 11/13/2009                    MARIE ANN GREENBERG

                                     Counselor at law

                                     Attorneys for Plaintiff,

                                     Marie Ann Greenberg, Trustee

                              By:_ /s/ Marie Ann Greenberg _____

                                     Marie Ann Greenberg, Esq.

Dated: 11/13/2009                    LERESSA CROCKETT

                                     ANDREA C. WEI

                                     Attorneys for Plaintiff John Keith Bagot

                        By:  /s/  Leressa Crockett

                            Leressa Crockett, Esq.

                        By:  /s/  Andrea C. Wei

                            Andrea C. Wei, Esq.